Day, J.
 

 This is a proceeding in error to reverse
 
 *377
 
 the finding of the Public Utilities Commission. The matter involves an extension of the route provided for in certificate No. 285, heretofore issued by the Public Utilities Commission, between Portsmouth and intersection of inter-county highway No. 104 and state route No. 73, the extension being for a distance of approximately 25 or 30 miles, and running to the village of Peebles, in Adams county. Plaintiff in error, J. S. Lykins, is the owner of said certificate No. 285 and is the same individual who operates what is known as the Portsmouth-Dry Eun bus line.
 

 This case was heard by the Utilities Commission jointly with cause No. 19801, which deals with a controversy between the plaintiff in error and one W. E. Davis as the holder of certificate No. 204, involving some conflict of interests over the route from Dry Eun, one of the termini of certificate No. 204, on the G-alena pike, to the entrance of the Portsmouth Country Club, a distance of approximately 2% miles. This latter controversy was adjusted by agreement of parties and a consent entry made before the commission to that effect, and therefore no consideration of cause No. 19801 is necessary.
 

 In the case relating to the extension of certificate No. 285, being cause No. 19790, the commission, upon full hearing, made the following finding:
 

 “The commission, being fully advised in the matter, finds that proof did not show necessity for extension applied for, and it is, therefore,
 

 “Ordered that the application of J. S. Lykins for a certificate of public convenience and necessity
 
 *378
 
 to operate a motor transportation company carrying passengers between the intersection of Inter County highway No. 104 and state route No. 73 and Peebles, as an extension to certificate 285, be and hereby the same is, denied.”
 

 An application for a rehearing and a number of affidavits in support thereof were filed, but the rehearing was denied.
 

 Is this order of the commission either unreasonable or unlawful, or against the manifest weight of the evidence?
 

 The record discloses that the village of Peebles, in Adams county, lies approximately 25 or 30 miles from the city of Portsmouth, Scioto county, the proposed route passing through the villages of Otway and Harden. Under the federal census of 1920, of which this court will take judicial notice, Peebles has a population of 1,008, Barden, 302, and Otway, 289. The record also discloses that the Norfolk & Western Railroad serves each of these communities, by providing two trains a day each way between Portsmouth and the said villages, and two other trains that make the stops under certain conditions. It is the chief complaint of the applicant, in support of the granting of the certificate in question, that the present schedule of trains on said railroad is such that the earliest hour at which passengers desiring to go to Portsmouth from either of said villages will arrive at Portsmouth is 10:30 in the morning, and that in order to return the same day it is necessary to leave Portsmouth at 2:10 in the afternoon, it being urged that the 3% hours for the transaction of
 
 *379
 
 business or shopping is too short a period, and that the other trains running each way do not arrive at Portsmouth at such hours as to properly permit the transaction of business and return the same day. The other train arrives at Portsmouth at 7:30 in the evening and departs at 7:05 in the morning.
 

 Attached to the brief of counsel is a time table of the Norfolk
 
 &
 
 Western Railroad, further disclosing that a train leaving Portsmouth at 3:35 in the afternoon stops at both Rarden and Peebles to discharge passengers holding tickets from east of Portsmouth; and the train arriving at Portsmouth at 11:35 p. m. stops at both Peebles and Rarden to discharge passengers from connecting lines at Cincinnati.
 

 The principles controlling the situation presented in the case at bar were before this court in
 
 Eager, Jr.,
 
 v.
 
 Public Utilities Commission,
 
 113 Ohio St., 604, 149 N. E., 865. In the opinion it is said:
 

 “In this class of cases a party is entitled to bring his cause here for determination upon the weight of the evidence, and this court will inquire whether the finding and order of the commission lacks such proof as to render it unreasonable and unlawful, but it does not follow that, because all the evidence was offered by the party complaining, and each of his witnesses gave testimony that in his opinion public necessity and convenience required motor transportation service, thereby that fact was established. The public convenience and necessity, or lack thereof, is established by proof of the conditions existing in the territory to
 
 *380
 
 be served, and it is the function of the commission to draw its own conclusion and form its own opinion from the proof of the conditions in the territory, rather than from the consensus of opinions of witnesses upon the ultimate fact as to the existence or nonexistence of the public necessity and convenience. ’ ’
 

 In
 
 McLain
 
 v.
 
 Public Utilities Commission,
 
 110 Ohio St., 1, 143 N. E., 381, the third paragraph of the syllabus is:
 

 “In determining whether public convenience and necessity require such motor transportation service, the commission shall consider whether the public proposed to be served by such motor transportation company have or have not adequate common carrier transportation service independent of the service proposed to be rendered by the applicant, and whether the additional service proposed to be rendered by the applicant will result in the public receiving more adequate or less adequate service.”
 

 These two cases were doubtless considered by the commission in reaching its conclusion.
 

 The record also discloses that letters from certain public officials, recommending favorable consideration of the applicant’s petition, and further, a large number of affidavits of various individuals, urging the necessity of granting the extension in question, were filed by the applicant in support of his motion for rehearing. These lack the probative value of depositions, or of a witness testifying upon the stand where opportunity for cross-examination is offered.
 

 
 *381
 
 While there is testimony pro and con, on the point of the necessity for this service, hy those who have more or less of an interest in the outcome of the controversy, and the application for the extension is protested by a rival bus operator, we think the commission must have been impressed by the testimony of the witness Whitehouse, who had been in charge of the bus station at Portsmouth for two years, although not at the time of testifying so engaged. His testimony is as follows:
 

 “Q. State to the commission if you think there is any necessity, from your knowledge of that territory, for motor transportation service over that extension. A. Over this extension to Peebles?
 

 “Q. Yes, sir. A. If there is, there was no inquiry that came into the bus station there, personally or by telephone, or otherwise, that would indicate any necessity for such service. We didn’t have an inquiry on an average of once a week.”
 

 While the witness had not visited Peebles nor been in Otway or Barden within a year and a half prior to the hearing, yet he knew the conditions at the Portsmouth end where the outgoing traffic started; and doubtless the commission attached weight to his testimony, he being disinterested and in a position to make practical observation on the question of the necessity for further extension of bus lines and of the public demand therefor. Public travel between country points and urban centers is, of course, a subject that should receive every encouragement to promote the convenience of those requiring the use of the highways for such transportation. Yet the necessity therefor must be
 
 *382
 
 considered, and, while added convenience might accrue to certain individuals, under some circumstances, desiring to go from Peebles, Barden, and Otway to Portsmouth, or return, it does not follow that proposed motor transportation is a necessity. Both elements must be present to justify the granting of a certificate.
 

 The question, then, for this court to determine is whether or not the finding of the commission, upon the whole record in the case, is manifestly against the weight of the evidence, unreasonable, or unlawful. The evidence to be considered in arriving at a conclusion must be the competent evidence received under the recognized rules for the production of evidence.
 

 Taking into consideration all the competent testimony shown by the record, conflicting as it is in character, as to the necessity of granting the extension applied for, also the present means of transportation open to the use of the public, we cannot say that the finding of the commission is so far against the weight of the evidence as to require a reversal by this court. In the event of some future hearing, what the competent evidence may show as to the necessity as well as the convenience of this proposed route wé may not discuss. We must deal only with the present record. We are not unmindful of the rule that we may not substitute our judgment for that of the commission as to the conclusion to be drawn from the evidence, unless the same is manifestly against the weight thereof. Under the conflicting evidence in this case as to both the necessity
 
 *383
 
 therefor and the convenience thereof, especially as we must consider only the competent evidence produced according to the established rules of evidence, we feel it becomes our duty to affirm the findings of the Public Utilities Commission.
 

 Order affirmed.
 

 Marshall, C. J., Jones, Matthias, Allen, Kinkade and Robinson, JJ., concur.