Allen, J.
 

 This case arises as an error proceed
 
 *422
 
 ing to an order of the Public Utilities Commission of Ohio, in the matter of the application of R. B. Evans, a motor transportation company, for a certificate of public convenience and necessity, wherein the commission, on April 9, 1929, entered an order granting to such applicant a certificate of public convenience and necessity to operate a motor transportation company carrying passengers or property as a common carrier between Van Wert, Ohio, and Toledo, Ohio, over a regular route between Van Wert and Toledo, via Paulding, Defiance, Napoleon, Grand Rapids, Waterville, and Maumee. The application was protested by the Western Ohio Railway & Power Corporation, the Lima-Toledo Railroad Company, the Ft. Wayne-Lima Railroad Company, the Wabash Railroad Company, and Carl J. Westover, owner of a certificate covering the regular route between Defiance and Toledo. At the hearing before the Public Utilities Commission, the Wabash Railroad Company and Carl J. Westover withdrew requesting that, if any certificate were granted, it should be restricted so as not to permit any haul between Defiance and Toledo and intermediate points. The granting of the certificate of public convenience and necessity restricted the applicant by an order not to pick up property at any point between the city of Defiance and the city of Toledo and not to deliver the same to either Defiance or Toledo, or any intermediate points.
 

 The Public Utilities Commission filed no opinion in the case, but the attorney examiner recommended that the certificate be granted upon the ground that, at the present time, there is no direct steam, electric, or motor service between Van Wert and Toledo,
 
 *423
 
 that none of the protesting electric companies render or give a direct service to any of the points mentioned in the application, and that a good and sufficient showing of necessity and convenience was made.
 

 We are unable to agree with the conclusion of the commission, for the reason that the record does not disclose any public convenience and necessity to be served by the establishment of this route.
 

 The city of Van Wert is located upon the Ft. Wayne-Lima Railroad, an electric railroad, operating between Lima, Ohio, and Ft. Wayne, Indiana. The Lima-Toledo Railroad and the Western Ohio Railway operate electric lines from Lima to Toledo. The Ft. Wayne-Lima Railroad Company and the other two traction companies, under a joint routing and tariff arrangement, transport freight between Van Wert and Toledo by way of Lima. The Western Ohio Railway operates to Toledo, via Findlay, by joint operation with the Wheeling & Southern, and this service is necessarily both roundabout and slow. However, the joint service of the Ft. Wayne-Lima Railroad and the Lima-Toledo Railroad is prompt and adequate for the present public need, as shown by this record. On the Lima-Toledo Railroad all passenger cars, which are operated with practically two-hourly service, carry shipments of package freight; the size of each package being limited to 150 pounds and 15 feet in length. The record shows that as high as approximately 300 packages have been carried in one shipment. This package freight is transported from Van Wert to Toledo in three and one-half hours. Between Van Wert and Toledo there are also four freight trains in each direction
 
 *424
 
 daily, handling the freight business from Van Wert and to Van Wert, either by through car or by transfer at Lima. The time of this service is approximately five to five and one-half hours. These trains, which carry bulk freight, may be loaded in Van Wert in the afternoon or evening, and the contents delivered to the consignee in Toledo early the next morning. Carload lots of such freight from Van Wert destined to Toledo are not transhipped at Lima, but are taken through to Toledo from Van Wert without change.
 

 As opposed to this established and highly integrated freight service, the applicant claims to establish publie convenience and necessity for a route from Van Wert direct to Toledo by the testimony of two witnesses, C. A. Weschke, traffic manager of Berdan
 
 &
 
 Co., a wholesale grocery in Toledo, and R. J. Balyeat, of Van Wert. It is the testimony of Evans that in Van Wert and other cities and villages along his route he will offer a house-to-house delivery of freight to Berdan
 
 &
 
 Co. and the R. A. Bartley Company. It appears from the record that Evans has solicited business with the companies; in other words, it does not appear from the record that these companies of their own motion have sought to have Evans establish such a route. When asked what is the motive which prompts these companies to favor the granting of the certificate, Weschke testified that they desired the certificate because of their form of business and because their method of conducting their business is different from that of their competitors. The shipments of Berdan & Co. are now delivered by the company’s own trucks in Toledo to the freight station of the electric railroads and
 
 *425
 
 thence transported by such railroads by way of Lima to Van Wert.
 

 E. J. Balyeat, of Van Wert, the second witness, stated that he was engaged in the sale of coal, bale ties, steel frames, and building supplies. He testified that he had lost business because of the lack of a regular route between Van Wert and Napoleon and because of his inability to secure a prompt delivery of freight. Balyeat testified that upon one occasion a bundle of bales was refused by the traction companies because of the method in which it was tied, and that he had never since shipped his bale ties over the traction lines. When asked whether his business needed the haul from Van Wert to Toledo, Balyeat answered, “Well, not at the present time, but it gives me an opportunity.” In other words, Balyeat wishes to have the certificate granted so that he can develop his business.
 

 We have a situation presented, therefore, in which the commission, while restricting Evans from picking up property in the city of Toledo destined for Defiance and intermediate points, and property in Defiance destined for the city of Toledo and intermediate points, because of an existing certificate previously issued to another motor transportation company, allowed an operation which will necessarily be in direct competition with the freight service via Lima to Toledo over the traction. This certificate was granted upon so-called evidence of public convenience and necessity, limited to testimony by a wholesale grocer, who had been solicited by Evans, and the head of a corporation who admits that he desires the service in order to extend his business into other territory.
 

 It is claimed by counsel on behalf of Evans that,
 
 *426
 
 under the decision in the case of the
 
 Lake Shore Electric Railway Co.
 
 v.
 
 Public Utilities Commission,
 
 120 Ohio St., 390, 166 N. E., 359, 361, it is not necessary for the commission to find that existing transportation companies are not giving adequate and sufficient service where a different kind of service, namely, door-to-door delivery, is being rendered. The only statement with regard to this question in the
 
 Lake Shore Electric Railway case
 
 is as follows :
 

 “Answering the third contention, that the commission failed to find that the existing transportation companies were not giving adequate and sufficient service, it may be said that the commission surely did find that public necessity and convenience required the additional equipment to care for the kind of service which had theretofore been rendered by the Liberty Highway Company, that is to say, that the freight should be gathered from the places of business of the shippers and distributed to the places of business of the consignees by the Liberty Highway Company, instead of being received and delivered at freight depots only, in accord with the customary service rendered by the Lake Shore Electric Railway Company, and the commission found and decided that the increase of equipment as prayed for would in no wise injure the protestan!.”
 

 Under Section 614-87, General Code, no motor transportation company shall begin to operate without first obtaining from the Public Utilities Commission a certificate declaring that public convenience and necessity require such operation. The commission is empowered to grant such a certificate only when the existing motor transportation company or
 
 *427
 
 companies serving such territory do not provide the service required, and must, before granting any certificate, take into consideration other transportation facilities of the territory for which the certificate is sought, and must refuse such certificate if the service furnished by existing transportation facilities is reasonably adequate. Hence the statute requires that the applicant shall prove that the public convenience and necessity require the service. To justify the issuing of a certificate of convenience and necessity for the operation of a motor transportation company over state highways, it must be made to appear by the preponderance of all the competent evidence produced before the Public Utilities Commission that, not only should such certificate be granted as a matter of public convenience, but also that there is a necessity therefor.
 
 Lykins
 
 v.
 
 Public Utilities Commission,
 
 115 Ohio St., 376, 154 N. E., 249. It seems to be the contention of the plaintiff in error that the holding of this court in the
 
 Lake Shore Electric Railway case, supra,
 
 has dispensed with this requirement. We do not read the above-quoted paragraph from the opinion in the
 
 Lake Shore Electric Railway case
 
 as indicating that this court has held that public convenience and necessity need not be shown for the establishment of a door-to-door truck service. In fact this paragraph specifically indicates that proof of public convenience and necessity is still required, for it points out that the commission did find that public necessity and convenience required the additional equipment.
 

 Proceeding to inquire, therefore, whether the public convenience and necessity require the establish
 
 *428
 
 ment of the route in question here, we find that the only testimony adduced is that certain private interests will be served. Necessarily there is a point at which the private interest becomes the public interest; but that a right to use the roads for purposes of private gain should be given to a transportation company to subserve a purely private demand of the small extent indicated by this record does not constitute a showing of public convenience and necessity.
 

 The order of the Public Utilities Commission will be reversed.
 

 Order reversed.
 

 Kinkade, Robinson, Jones and Matthias, JJ., concur.