Bell, J.
Appellant has filed eight assignments of error, the first of which reads:
“The finding and order of the commission (appellee) are against the manifest weight of the evidence, are not supported by the evidence, and are based on testimony not received under the established and recognized rules for the production of evidence.”
The testimony taken before the commission was voluminous, and much of it was admitted in evidence over the objection of appellant. The following excerpts from the evidence presented by the complainant will point up the nature of much of the evidence considered by the commission.
The following is from the testimony of Raymond E. Hildebrand:
“* * * A. Yes, sir, I have. Just recently I was told by the ticket agent at the New York'—
“Mr. Smith: I object to what he was told.
*254 ‘ ‘ Chairman Monlton: Overruled.
“A. (Continuing) I was told by a ticket agent that if I bought a fare on the train that I would be assured of a seat. He said we wouldn’t have many passengers on that night. And so I bought a ticket and got on the train and had difficulty getting a seat.
‘ ‘ Q. Which train was that, going from Toledo to Columbus? A. From Toledo to Columbus.
“Q. Now, as to the time schedule, Mr. Hildebrand, have you had opportunity either from your own experience or by talking to and investigating this matter among other people concerned to arrive at any opinion or conclusion as to what that service at the present time means, as to whether it is sufficient and adequate?
“Mr. Smith: I shall object to anything based upon his conversation with others.
“Chairman Moulton: I think as a public official he can testify to that. The objection is overruled.
“Mr. Smith: Note an exception. He is a complainant here in his individual capacity, if the commission please.
“Chairman Moulton: I believe the complainant [complaint] states his official position.
“Mr. Smith: It does, but does a state Senator have any right to testify to things as to which a private individual may not testify.
‘ ‘ Chairman Moulton: He is a public official. He may testify.
i l * * #
“* * * A. Yes. After taking the matter up with several individuals and firms—
“Mr. Smith: I object.
“Chairman Moulton: The objection is overruled.
“A. —I came to the conclusion—
“Mr. Smith: As to his conclusion.
‘ ‘ Chairman Moulton: Overruled.
*255 “Mr. Konwin: I offer it in evidence.
“Mr. Smith: I shall object to it. Is that the letter from the Columbas Chamber of Commerce?
“Mr. Konwin: That is right.
“Mr. Smith: I shall object to its introduction. It is pure hearsay. We-have no opportunity to cross-examine the man that wrote the letter.
“Commissioner Winter: Let me ask you, Senator Hildebrand, is this letter addressed to you individually or in your capacity as a member of the Ohio Senate?
“The Witness: As a member of the Ohio Senate, and I am presenting these letters for the purpose of building up my case, and there is no other way that I can do it in these short moments, unless we are going to have more hearings, which I think we ought to have, unless we take these hearings along these routes on the railroad.
“Mr. Smith: Well, if the commission please, we have no objection to the length of the hearing. We still think that we should have a right to cross-examine people who are volunteering statements as to the adequacy or inadequacy of this service. We don’t care where we have the hearings or how many of them we have, but if Lou Wilsch wants to say something about the inadequacy of the service, I want Lou Wilsch on the stand and I have got some questions I would like to ask him.
“The Witness: Well, as a state Senator I am certainly representing him.
“Mr. Smith: If the commission please, I am a little bit at a loss to understand yet why the position of Mr. Hildebrand as a state Senator puts him in any higher position with respeet to the introduction of evidence in a complaint under Section 524 of the General Code before this commission. A state Senator is vested with no authority to deal with the adequacy or inadequacy of rail transportation except in the legisla *256 tive halls. He may introduce legislation seeking to correct certain matters, but when he appears before this commission in the position of a complainant, I would gather that he is bound by the same rules of evidence as is any other complainant. We still have the right to cross-examine people who offer statements here. His position as a state Senator doesn’t waive the hearsay rule in any respect that I am aware of.
“Chairman Moulton: We recognize the fact that strictly speaking these letters are not admissible. We also recognize the fact that in the presentation of his case the complainant perhaps has no other means of presenting the material except by this method. We don’t like to hamper the complainant in the presentation of his case here unduly, and it seems that we should not get too technical at this point in the admission of testimony. We are all familiar with the strict rules of evidence, but on many occasions the commission has found it necessary and proper to depart to some extent from the strict letter of the rules of evidence, and I think administrative boards are generally considered to have that right.
( 6 # # #
“Chairman Moulton: The objection is overruled. The exhibit is received.”
The following is from the testimony of Arthur M. Barrie:
“Q. I show you exhibit No. 3. Will you please look at it and read it and tell the commission what it is? A. Excerpt from the minutes of the board of governors’ meeting, Toledo Small Business Association, Tuesday, March 3, 1953.
“Q. All right, are you familiar with what those minutes desire to express in relation to its passage by that organization? A. Yes, I am. I was not familiar *257 with this action, but I have since been apprised of the action by the president of the association.
“Q. And you have ascertained for your own information and you believe to be true that that particular action was taken by the Toledo Small Business Association? A. Yes, I do.
“Mr. Konwin: I move the acceptance of exhibit No. 3 in evidence.
“Chairman Moulton: Is there objection?
“Mr. Smith: I have the same formal objection.
“Chairman Moulton: The objection is overruled. # # #
i l * * #
‘ ‘ Q. Now, Mr. Barrie; you have also made an examination and a survey of the train situation, passenger train situation, for the Toledo Chamber of Commerce. Is that correct? A. That’s correct.
“Q. Will you please tell the honorable commissioners what were your findings in that respect?
“Mr. Smith: I shall object.
‘ ‘ Chairman Moulton: Overruled.
“Mr. Smith: Exception. It is hearsay. Did you go out and ask people about it?
“Chairman Moulton: He stated that he did. He stated he made the survey.
“The Witness: I did.
“Mr. Smith: I object. I think it is entirely incompetent.
“Chairman Moulton: Overruled. You may proceed. ’ ’
The following is from the testimony of Robert W. Reider:
“* * * A. I have an opinion, sir, that the service is inadequate.
“Q. Do you arrive at that opinion from your personal experiences or from what your constituents were *258 able to report to you, or any surveys that you made, or any information that you have received in connection with your representing the district in the assembly? A. My opinion is based primarily upon information that has been brought to me by students at Ohio State University from my district.
“Q. Will you please give the commission the benefit of the information that you have so received ?
“Mr. Smith: May I for the record have an objection to this?
“Chairman Moulton: The objection is overruled.
“Mr. Smith: Exception.”
The following is from the testimony of Raymond E. Hudson:
“* * * A. Partially. Of course, this is of a short duration of time, but .within that short period I personally have talked with a number of our members and also to other people in our community who have voiced verbal complaint against the rail service between Columbus and Toledo, and, of course, to my secondary knowledge, on the basis of information passed along to me from other members of the Columbus Chamber of Commerce staff on their complaints received during the course of normal business in the past couple of years.
“Mr. Smith: I move the answer be stricken as based entirely on hearsay.
‘ ‘ Chairman Moulton: Overruled.
“Mr. Smith: Exception.
( C * * *
“Q- Now, you have commented on the present schedule, Mr. Hudson. Have you had any complaint with regard to the present schedule as far as the people of Columbus are concerned?
“Mr. Smith: I shall object.
“Chairman Moulton: You mean, in an official capacity?
*259 “Mr. Wylie: Yes.
“The Witness: Without hearsay—
‘ ‘ Chairman Moulton: Overruled, he can answer.
‘ ‘ The Witness: What ?
“Chairman Moulton: You may answer.
‘ ‘ The Witness: All right, without bringing in hearsay, I have talked to some people concerning rail service between Columbus and Toledo. These range from the type of businessman who may only make one trip a month to some companies who may have several hundred during the course of the year. I believe that it would be almost impossible to ascertain in advance the amount of passenger traffic that would be generated among business and industry alone here in Columbus if additional passenger rail service between Columbus and Toledo were installed at a convenient hour of scheduling. I do not know exactly, and I don’t think anybody else would know exactly what percentage of the total trips made by our wide number of businesses, wholesale and retail, as well as industrial firms, would make of this particular service.”
The following is from the testimony of M. E. Sensenbrenner:
“Q. Now, in your capacity as mayor of the city of Columbus, have you had individuals approach you regarding these transportation problems from Columbus to Toledo?
“The Witness: Pardon me?-
“Mr. Smith: Objection.
“Chairman Moulton: Overruled, he may answer.
“The Witness: I have had calls from various individuals and friends of my own here from the state office building and in the statehouse that had business in Toledo and the only thing I can give you gentlemen is this; their desire and their wish that we have better transportation from the city of Columbus into Toledo and out again.”
*260 The following is from the testimony of Raymond E. Hildebrand on redirect examination:
“Q. Senator, I understand that there are several other matters that you desire to call the commissioner’s attention to in connection with the train service between Toledo and Columbus. In connection with the adequacy of the service I understand you have some communications which you desire to present to the commission. Will you please let me have them one at a time? First pick one up and indicate what it is and we will process it from there on in. A. I would like to get into the record the reference to the resolution that was passed a week ago by the House of Representatives making a request of the commission in regard to this train service.
“Q. That is House Resolution No. 233. Are you generally familiar with that?
“Mr. Smith: We are.- We have no objection to its being filed but we do object to its introduction as an exhibit in the record.
‘ ‘ Chairman Moulton: It has been .received into the file. The clerk of the house transmitted the resolution to us and it has been incorporated in the file. It has not been made a part of the formal record as an exhibit.
“Mr. Konwin: We now move that it be made a part of the record, Your Honor.
“Chairman Moulton: Is there objection?
“Mr. Smith: There is.
“Chairman Moulton: The objection will be overruled and it will be received in the record.
C ( * * *
“Chairman Moulton: We permitted the Senator to testify at Toledo in his official capacity as a state Senator.
“Mr. Smith: We offer our objection.
“Chairman Moulton: As to certain matters that *261 would ordinarily be regarded as hearsay. I think the Senator may testify as to matters which have come to his attention and knowledge in his capacity as a state Senator.
“Mr. Smith: So may we, for the purpose of shortening the record, have a continuing objection to this line of testimony?
“Chairman Moulton: Yes.
< Í * # *
“Q. Senator, I think there are one or two other matters in connection with this problem of transportation between Toledo and Columbus that you desire to call to the attention of the commission. Now, will you please do so at this time. A. Well, I would like to make a statement. I have been asked by Mrs. Opal J. Mundy, who is one of our five state Representatives to make this statement to the commission. She is not in very good health. She is not going to be a candidate for re-election because of that. She had an experience on the railroad here a week ago last Thursday—
“Mr. Smith: I shall object to this. It is purely hearsay.
“Chairman Moulton: Well, we have been following the liberal rule here. '
“Mr. Smith: I know, but I want my record made.
“Chairman Moulton: I understand.
“Mr. Konwin: I thank you for the liberal policy, Your Honor.
“Chairman Moulton: You may object. All right.
* *
“Q. Senator Hildebrand, I believe you have a communication or a statement from the Ohio Wesleyan University in connection with this matter: A. Yes, I did, Mr. Chairman, but in my haste to catch that 7:35 train last Sunday I forgot to put it in my brief case.
“Q. Do you wish to make a statement?
*262 “Mr. Smith: Our objection continues to this.”
The following is from the testimony of U. E. Webster:
“Q. You said you are familiar with the present train service. Will you please tell the commission what is your opinion as to whether or not it is adequate? A. In my opinion- — and I get this direct from the gripes that come to a chamber of commerce office daily and sometimes at night at home when they are called up and asked why the chamber of commerce—
“Mr. Smith: I object.
“Chairman Moulton: Overruled.
“The Witness: Beg pardon?
“Q. (By Mr. Konwin) Gro ahead, Mr. Webster.
“Chairman Moulton: Overruled.”
In the summary of testimony made by the commission, the following language indicates the reliance of the commission upon the type of testimony set out above:
Relative to the testimony of Raymond E. Hildebrand. ‘ ‘ Several individuals have contacted him in his official capacity as state Senator complaining against the present inadequate passenger train service between Columbus and Toledo.”
Relative to the testimony of Frank King. “* * * that in his capacity as Senator he has received a considerable number of complaints on the passenger train service between Toledo and Columbus.”
Relative to the testimony of Robert W. Reider. “He stated he has received complaints from students of The Ohio State University regarding the lack of sufficient passenger train service between Columbus and Toledo.”
Relative to the testimony of M. E. Sensenbrenner. “He stated in his capacity as mayor, various citizens have expressed their desire to have better public transportation between the cities of Columbus and Toledo.”
*263 The testimony set out herein was clearly hearsay and as such was incompetent. Although we recognize that the Public Utilities Commission, being an administrative body, is not and should not be inhibited by the strict rules as to the admissibility of evidence which prevail in courts, yet such freedom from inhibition may not be distorted into a complete disregard for the essential rules of evidence by which rights are asserted or defended.
This court laid down as follows the rule as to such testimony in the first paragraph of the syllabus in Lykins v. Public Utilities Commission, 115 Ohio St., 376, 154 N. E., 249:
“While the proceedings before the Public Utilities Commission are informal in character, yet, in the review of a petition in error filed in this court to reverse an order of such commission on the ground that it is against the weight of the evidence, unlawful or unreasonable, this court will examine the entire record to determine whether such order is based upon sufficient evidence, received under the established and recognized rules for the production of evidence.”
The appellee admits that there is some hearsay evidence in the record but contends that there is sufficient competent evidence therein to support its order. It is impossible for this court to determine, however, to what extent the order of the commission was based on competent evidence or to what extent it was based on the incompetent evidence. Whether, as contended by the appellee, there is in the record, exclusive of this incompetent evidence, competent evidence to support its order, we will not determine until the cause is here upon proper findings.

Order reversed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Taet, JJ., concur.